■ The People of the State of New York, Respondent, v Champagne Smith, Appellant. [869 NYS2d 88]—

Since there was sufficient corroboration of defendant's guilt, including consciousness-of-guilt evidence and partially incriminating statements to the police, the exclusion of expert testimony on the reliability of eyewitness identification does not require reversal. Furthermore, there were highly reliable multiple eyewitness identifications. In *People v Abney* (57 AD3d 35 [2008]), this Court determined that an eyewitness identification was reliable where the witness saw the perpetrator face to face in a well-lit stairwell and identified him in an array of photos an hour after the incident, and again three weeks later in a lineup. Here, the reliability of the eyewitnesses is even greater; not only were there multiple eyewitnesses, but each witness observed the perpetrator at close range on a well-lit street. Moreover, one of the eyewitnesses recognized defendant from the neighborhood, and shortly after the shooting, all three eyewitnesses identified the perpetrator in a lineup. We note that defendant's reliance on *People v LeGrand* (8 NY3d 449 [2007]) is misplaced because unlike the instant case, the eyewitness identifications in *LeGrand* were made some *seven years* after the incident and only after one of the multiple eyewitnesses was able to identify the defendant in a lineup and photo array.

At trial, defendant attacked the credibility of two of the prosecution witnesses by asking the jury to draw an inference that

they had received lenient treatment on unrelated cases in return for their testimony. The witnesses themselves, and prosecutors assigned to their cases, testified that there were no cooperation agreements and that the dispositions of the witness's cases had nothing to do with their status as witnesses. During deliberations, the jury asked for an explanation of "cooperation agreements." The court responded with an instruction stating, among other things, that "there was no evidence that any witness in this case testified under a formal cooperation agreement." As requested by the jury, the court also directed a readback of all the testimony relevant to this issue. To the extent that defendant presently argues that the court should have told the jury it could infer that a cooperation agreement existed based on the evidence, that argument is unpreserved because he never requested such an instruction, and we decline to review it in the interest of justice. As an alternative holding, we also reject it on the merits. In addition, we reject defendant's argument that the court's instruction, as given, warrants reversal. The instruction that there was no "formal" agreement was literally true but misleading, because it failed to address the possible inference that there was an implied or informal agreement, notwithstanding the witnesses' and the prosecutors' disclaimers. However, there was no prejudice to defendant, because the instruction did not eliminate from the jury's consideration the existence of an informal or implied agreement (*see e.g. People v Lilly*, 264 AD2d 684 [1999], *lv denied* 94 NY2d 825 [1999]), especially since the instruction was accompanied by readbacks of testimony on this very issue. In any event, any error in the instruction was harmless, because there was overwhelming evidence of defendant's guilt, and the testimony of the two witnesses at issue was only a portion of the extensive proof.

The trial court properly permitted a witness to testify while wearing a disguise consisting of a wig and false facial hair. Initially, we conclude that there is no evidence that the disguise impaired the jury's ability to assess the witnesses' demeanor, and we accordingly reject defendant's Confrontation Clause argument. The People made a sufficient showing that the disguise was justified by the necessities of the case (*see People v Morales*, 246 AD2d 302 [1998], *lv denied* 91 NY2d 975 [1998]). There was a heightened need to protect the security of this witness; we note that on appeal defendant does not challenge the court's ruling permitting the witness to testify under a pseudonym, and in a closed courtroom. While defendant claims that the witness's disguise suggested to the jury that defendant was dangerous, he did not avail himself of the court's offer to deliver a curative instruction. While a jury's note indicated that

it was aware the witness wore a disguise, any prejudice was alleviated by the court's supplemental instruction. In any event, any error was harmless in view of the overwhelming evidence of defendant's guilt.

The hearing court properly denied defendant's motion to suppress the lineup identification made by one of the witnesses, or to reopen the *Wade* hearing, based on a belated disclosure that the witness recognized two of the five fillers. This circumstance did not render the lineup unduly suggestive (*see People v Floyd*, 173 AD2d 211 [1991], *lv denied* 78 NY2d 966 [1991]; *People v Norris*, 122 AD2d 82, 84 [1986], *lv denied* 68 NY2d 916 [1986]). A review of the lineup photograph indicates that all participants were sufficiently similar in appearance, and any differences in height were minimized by the fact that the participants were seated.

The prosecutor's summation comments that defendant now challenges as shifting the burden of proof were made in fair response to defense counsel's summation, and they did not violate any constitutional right of defendant. Furthermore, the court's curative instructions were sufficient to prevent any prejudice. Defendant's remaining challenges to the prosecutor's opening statement and summation are unpreserved, and we decline to review them in the interest of justice. As an alternative holding, we also reject them on the merits.

The trial court's denial (11 Misc 3d 1087[A], 2006 NY Slip Op 50758[U] [2006], *9-11) of defendant's CPL 330.30 (2) motion to set aside the verdict on the ground of juror misconduct was proper. Concur—Tom, J.P., Saxe, Williams and Catterson, JJ.

Moskowitz, J., concurs in a separate memorandum as follows: I concur with the result because there were multiple eyewitness identifications and other corroborating evidence in this case. However, I write separately because I disagree with the majority's legal analysis. As the majority readily recognizes, this case involved "highly reliable multiple eyewitness identifications" and additional evidence such as "partially incriminating statements to the police." Accordingly, the majority affirmed the conviction. However, in support of upholding the conviction, the majority cited to this Court's recent decision in *People v Abney* (57 AD3d 35 [2008]), a case where I dissented, and which is not applicable to this case. *Abney* involved a single eyewitness who was the victim of a violent robbery in the subway. The victim, who was only 13, picked her assailant out of a lineup a full three weeks after the crime. When the trial court rejected expert testimony on eyewitness identification, there was no corroborating evidence before it. Here, by contrast, there was

extensive corroborating evidence. Therefore, the issue in *Abney*—namely, whether to allow expert testimony concerning the accuracy of eyewitness identification in a single-eyewitness case (and in my view with no other corroborating evidence)—is simply not an issue in this case.

The Court of Appeals has held that a court should consider whether to allow expert testimony about eyewitness reliability "where the case turns on the accuracy of eyewitness identifications and there is little or no corroborating evidence connecting the defendant to the crime" (*People v LeGrand*, 8 NY3d 449, 452 [2007]). This case is more like *People v Tocci* (52 AD3d 541 [2008]), in which the court denied the defendant's request for an expert witness where there were 11 eyewitnesses and other corroborating evidence (*see also People v Miller*, 8 AD3d 176 [2004], *mod on other grounds* 6 NY3d 295 [2006], where one of two identifying witnesses had known the defendant for many years and *People v Austin*, 38 AD3d 1246 [2007], *lv denied* 8 NY3d 981 [2007], where there were four identifying witnesses). Indeed, as the *Tocci* court's "*cf.*" cite to *LeGrand* demonstrates (52 AD3d at 542), that court did not consider the necessity of expert testimony to be an issue. Nor is it here. However, it was in *Abney*. Therefore, I concur, but disagree with the majority's reliance on *Abney*, because the situation in that case, with its analysis of *LeGrand*, is simply not the same as in this one.